SHEAFE v. LARIMER.

(Circuit Court, N. D. Iowa, W. D. April 9, 1897.)

1. BANKS AND BANKING—ASSESSMENT ON STOCKHOLDERS.

Where, upon the petition of the receiver of a state bank, an order has been made authorizing an assessment upon the capital stock of the bank under a statute authorizing such assessment, the order is binding upon stockholders, and cannot be collaterally attacked by them, although they were nonresident, and not before the court.

2. SAME—COUNTERCLAIM.

In an action by the receiver of a bank against a stockholder under a statute imposing a liability upon stockholders for the debts of the bank, the defendant cannot plead as a counterclaim a claim for damages against the bank for false representations made at the time he bought his stock, the bank not being a party to the action.

This was an action at law brought by C. M. Sheafe, receiver of the Washington Savings Bank, against A. V. Larimer, to recover an assessment on the stock of the bank. Submitted on demurrer to answer and counterclaim.

Strong & Owen, for plaintiff.
F. McNulty, for defendant.

SHIRAS, District Judge. From the averments in the petition filed in this case it appears that the Washington Savings Bank is a banking corporation created under the provisions of the laws of the state of Washington; that in January, 1894, proceedings in liquidation were brought against the bank in the superior court of Kings county, in said state, and C. M. Sheafe was appointed receiver of the bank, with authority to collect the assets of the corporation, and apply the same in payment of the debts due therefrom; that on the 31st day of August, 1895, the superior court in said Kings county, upon the petition of the receiver, made an order authorizing an assessment upon the capital stock of said bank, in an amount equal to the face value thereof, to be payable to said receiver within 30 days from the date of the order; that the defendant herein is a stockholder in said bank, having purchased on the 1st day of October, 1891, 100 shares of stock, of the par value of $100 per share; that the defendant refuses to pay said assessment, and therefore judgment for the sum of $10,000 is prayed

against him. To this petition the defendant files an answer and counterclaim, averring therein that he is a resident of Iowa; that he never was in the state of Washington, and never took part in the management of the bank; that he was not a party to the proceedings in liquidation, and had no notice of the application to the court for an order authorizing the assessment upon the capital stock of the bank; that, when the bank was placed in liquidation, the assets amounted to the sum of $233,214, and the liabilities to the sum of $143,717; that, when the bank was first organized, it had a capital stock of $50,000; that afterwards it was proposed to increase the capital stock to $100,000, and that the president of the bank represented to him about October 1, 1891, that 400 shares of the proposed increase had been subscribed and paid for, at the rate of $105 per share, and thereby the defendant was induced to purchase 100 shares, paying therefor the sum of $10,500; that in fact only $24,980 of such increase had been subscribed and paid for; that he (the said defendant herein) did not know or learn of the fraud thus practiced on him until some time after the receiver herein had been appointed, when he offered to return the stock to him; and he now prays judgment for the damages caused him, in the sum of $10,500, against the receiver and the named bank. To this answer and counterclaim, the plaintiff demurs on several grounds, the first point being that the defendant cannot, in this court and in this proceeding, attack the action had in the superior court of Kings county authorizing an assessment upon the capital stock of the corporation. The position taken by defendant is that he was not within the territorial jurisdiction of the court making the order; that he was not notified of the proceeding; that it was purely ex parte; and that the stockholder is entitled to his day in court, or, in other words, he is not bound by the assessment order unless he had personal notice of the application therefor.

The provision of the statutes of the state of Washington creating a liability on stockholders for an amount equal to the face value of the stock held by them is identical with that found in the act of congress known as the "National Bank Act." In the case of Wilson v. Book, 43 Pac. 939, the supreme court of Washington held that the statutory liability thus imposed upon stockholders can be enforced by a receiver of the corporation, and it thus appears that the superior court of Kings county had the right to entertain the application of the receiver for an order directing the making of an assessment upon the shareholders of the bank. This application was made in the case pending in that court, wherein the bank was a party; and it was not necessary to give notice to the individual stockholders in order to confer jurisdiction upon the court to make the assessment order.

This exact question was before the supreme court in Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, and it was therein said:

"Sued after such an order of court, the defendant does not deny the existence of any one of the facts upon which the order was made, but contends that there has been no call as to him, because he was not a party to the cause between the creditor and corporation. We understand the rule to be otherwise, and that the stockholder is bound by a decree of a court of equity against

the corporation in enforcement of a corporate duty, although not a party as an individual, but only through representation by the company. A stockholder is so far as integral part of the corporation that, in view of the law, he is privy to the proceedings touching the body of which he is a member. Sanger v. Upton, 91 U. S. 56, in which case it is also said: 'It was not necessary that the stockholders should be before the court when it [the order] was made, any more than that they should have been there when the decree of bankruptcy was pronounced. That decree gave the jurisdiction and authority to make the order. The plaintiff in error could not in this action question the validity of the decree; and, for the same reasons, she could not draw into question the validity of the order.' "

The same doctrine is announced in Glenn v. Liggett, 135 U. S. 533, 10 Sup. Ct. 867, and Priest v. Glenn, 2 C. C. A. 305, 51 Fed. 400.

Under the rule as given in these cases, it must be held that the stockholders in the Washington Savings Bank are bound by the assessment order granted by the superior court of Kings county, and that the validity thereof cannot be questioned in this collateral proceeding in this court, upon any of the grounds set forth in the answer of the defendant. If it be true that no real necessity for calling upon the stockholders existed, and that the assessment was improvidently made, relief must be sought in the court granting the order. In this case it must be held that it is not open to the defendant to question the validity of the assessment order, on the ground that the stockholders were not personally notified of the application for the order, or for the reason that the stockholders should not have been assessed until the other assets of the corporation had been wholly exhausted.

The next question for consideration arises upon the paragraphs of the answer setting forth that the defendant was induced to purchase the shares of stock by him held, by reason of certain false statements made to him by the president of the bank, to the effect that $40,000 of the increased capital stock had been purchased by others, at the rate of $105 per share, whereas in fact only $24,980 of such increased stock had been purchased by others, and upon the portion of the answer setting up a counterclaim for damages based upon these alleged false representations. Although the defendant sets forth in the answer the facts relied upon as constituting false representations, a rescission of the contract of sale is not prayed for; nor could it be properly sought for in this action, the same being at law. The answer admits that in fact the defendant, since October 1, 1891, has been a stockholder in the bank, but avers, in substance, that he was induced to become a stockholder by means of certain false representations made to him by the president of the bank. The defendant has not sought nor secured a rescission of the contract of purchase of the stock by a decree in equity, and he therefore is yet legally a stockholder, and subject to the liabilities of a stockholder. The remedy sought in this action by the defendant is a judgment for damages, and this is sought in the form of a counterclaim against the plaintiff, and against the bank. The latter was not a party to the suit as originally brought, and has not been served with notice, nor has an appearance therefor been entered. So far as the record now shows,

the counterclaim is pending against the receiver only, and I can see no ground for holding that the counterclaim can be sustained against the rights represented by the receiver in this case. The cause of action, if any exists, does not arise out of any acts of the receiver, but came into existence when the sale of stock was made, in October, 1891. It is a claim for damages against the bank, and it is open to the defendant to sue upon the claim for damages, and, if judgment in his favor is obtained, to file the claim as a debt with the receiver; but it cannot be availed of as a counterclaim against the receiver in the present action.

The reasons why this should not be permitted are well stated in Barton v. Barbour, 104 U. S. 126–128, wherein it is said:

"The evident purpose of a suitor who brings his action against a receiver without leave is to obtain some advantage over the other claimants upon the assets in the receiver's hands. This judgment, if he recovered one, would be against the defendant in his capacity as receiver, and the execution would run against the property in his hands as such. * * * If he has the right, in a distinct suit, to prosecute his demand to judgment without leave of the court appointing the receiver, he would have the right to enforce satisfaction of it. By virtue of his judgment, he could, unless restrained by injunction, seize upon the property of the trust, or attach its credits. If his judgment were obtained outside the territorial jurisdiction of the court by which the receiver was appointed, he could do this; and the court which appointed the receiver and was administering the trust assets would be impotent to restrain him. The effect upon the property of the trust of any attempt to enforce satisfaction of his judgment would be precisely the same as if his suit had been brought for the purpose of taking property from the possession of the receiver."

Thus, in this case, if the court should permit a judgment to be entered against the receiver upon the counterclaim, and an execution to be issued thereon, the same might be levied upon the assets of the bank in the receiver's hands, thus giving him a preference over the other creditors; and the same result follows if the court should allow the claim for damages to be set off against the sum due from the defendant on the shares of stock held by him. Thus, in Sawyer v. Hoag, 17 Wall. 610, it is held that a stockholder indebted to an insolvent corporation, for portions of the capital stock not paid in full, cannot set off against this trust fund, belonging to the creditors, a sum due him from the corporation. In Scammon v. Kimball, 92 U. S. 362, it was ruled that a claim for losses by fire due from an insurance company cannot be set off by the insured against notes given by him for the capital stock of the company. And in Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, it was held that a stockholder indebted to an insolvent corporation for unpaid shares cannot set off against this trust fund for creditors a debt due him from the corporation.

The receiver in this case is suing on behalf of creditors to recover an assessment made upon the holders of the capital stock of the insolvent bank, or, in other words, is suing to recover a trust fund belonging to the creditors; and, under the doctrine announced in the cases cited, it must be held that a claim for damages, such as is counted on by the defendant, cannot be set off in this action against the claim of the creditors represented by the receiver. In Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, the question

when a set-off is valid against a receiver of a national bank is very fully discussed. In that case the receiver, Armstrong, brought suit upon a promissory note for $10,000, signed by Scott and the Farmers' Bank; and the latter pleaded, as a set-off, a sum standing to its credit on the books of the Fidelity Bank, of which Armstrong was receiver. The receiver demurred to the plea of set-off, and the demurrer was sustained, and judgment at law was rendered for the full sum due on the note. Thereupon a bill in equity was filed by the judgment defendants, setting forth the facts, and praying an injunction to restrain the collection of the judgment at law. Upon demurrer this bill was dismissed in the circuit court, and an appeal was taken to the court of appeals for the Sixth circuit, by which court the questions at issue were certified to the supreme court, by which it was held that the set-off was available to the defendants in equity, and should be allowed. The conclusion reached in that case was that if the Fidelity Bank had not become insolvent, and had itself demanded payment of the Farmers' Bank of the note when it came due, the latter, bank would have had the right to require the application on the note of the sum held on deposit by the Fidelity Bank, and that this right of mutual set-off was not defeated or extinguished by the fact that the Fidelity Bank was placed in liquidation through the appointment of a receiver. In substance, it was held in that case that where, prior to the insolvency of the bank, the right of set-off existed by reason of the express agreement of the parties, or by reason of the nature of the dealings between the parties, this right of set-off would not be terminated because one of the contracting parties became insolvent, and a receiver thereof was appointed, it being held that the equity and right of mutual set-off were superior to the equity of the general creditors. The rule announced in this case is not, however, applicable to a suit brought by a receiver to recover an assessment made under the provisions of a statute imposing a liability upon corporate stockholders for the debts of the corporation. It is only in a very limited sense that such liability can be said to be an asset of the corporation. The unpaid portions of the capital stock subscribed for may be called in by the corporation, and may be applied, not only to the payment of the corporate debts, but also to the extension and furtherance of the corporate business; and thus such sums may be held to be an ordinary asset of the corporation, as well as a trust fund to be used for the benefit of creditors. Not so, however, with regard to the statutory liability to assessments for a sum equal to the face value of the stock. This liability can be enforced only on behalf of creditors, and when a bank, having become insolvent, is placed in the hands of a receiver, the latter can alone sue for and recover the same, it being held that in such case all the creditors are entitled to share ratably in the trust fund, and hence the suit must be in the name of the receiver, as the representative of all the creditors. Bailey v. Mosher, 11 C. C. A. 304, 63 Fed. 488.

Having regard, therefore, to the nature of the liability sought to be enforced against the defendant in this case, and the rights of

all creditors thereto, it cannot be held that there was any agreement, express or implied, existing between the corporation and the defendant, as a stockholder therein, upon which to base the right of set-off, or that there exists any equity in favor of defendant which entitles him to set off his unliquidated claim for damages against the statutory right of the creditors, sought to be enforced in this action. The demurrer to the fourth and succeeding paragraphs of the answer, including the counterclaim declared on, is sustained.