# NORTHWESTERN TRUST COMPANY v. H. N. BRADBURY.[1]

February 2, 1912.

Nos. 17,423—(218).

**Liability of stockholder to creditors.**

The stockholder's liability created by section 3, article 10, of the state Constitution constitutes a reserve or trust fund for the benefit of creditors, and is enforceable only in sequestration or insolvency proceedings, in which all creditors are afforded an opportunity to be heard. Allen v. Walsh, 25 Minn. 543, followed and applied.

**Not discharged by payment of assessment.**

The liability is not discharged by the payment of an assessment upon the stock levied pursuant to orders given by the public examiner, acting under the provisions of section 3000, R. L. 1905; the assessment having been ordered on account of an impairment of the bank's funds, and to enable it to reopen its doors and continue its banking business.

**Voluntary payment to one creditor.**

Nor will the voluntary payment by a stockholder of the full quota of his liability to a particular creditor of the corporation relieve him from the payment of an assessment duly made in liquidation proceedings.

Action in the district court for Ramsey county by the receiver of the State Bank of St. Paul, to recover an assessment of $2,500 levied by that court upon the stock of defendant in the insolvent bank. The defense interposed is stated in the sixth paragraph of the opinion. The case was submitted upon an agreed statement of facts to Kelly, J., who made findings and as conclusions of law ordered judgment in favor of plaintiff for $2,500, and that the judgment have incorporated in it the following: "Provided that the defendant, in the event that the receiver is enabled to collect from assets of the State Bank of St. Paul, now considered worthless, or from other sources, sufficient so that it will not be necessary to use all of the

[1] Reported in 134 N. W. 513.

amount collected from the defendant, on account of his stockholder's liability, to pay the debts of the bank outstanding on May 23, 1908, then and in that event the defendant may apply to the court either in this action or upon the application of the receiver for an order allowing his final account for an order directing the receiver to refund such part of the amount collected from the defendant pursuant to his judgment, as he may show himself entitled to upon a hearing, and the court hereby reserves power over its judgment to such an extent as may be necessary to protect the rights of the defendant hereunder." From an order denying defendant's motion for a new trial, he appealed. Affirmed.

*A. B. Jackson,* for appellant.

Because of radical differences between the provisions of the national bank law and the corporation laws of this and other states, and also because of radical differences between the policy of the Federal government respecting national banks of issue, and the policies of the states with respect to corporations in general, the decision in Delano v. Butler, 118 U. S. 634, 30 L. ed. 260, is not applicable.

In that case the complainant sought an injunction to restrain the prosecution of an action at law against him by the receiver of the Pacific National Bank of Boston. The complainant urged that a previous payment by him of an assessment of one hundred per cent which had been resolved upon and agreed to by the stockholders "by a vote that was almost unanimous," following a notice from the comptroller of the currency under R. S. § 5205, should be credited to him in discharge of the shareholder's liability imposed by section 5151. The Supreme Court of the United States held against this contention. The very brief disposition of the question in the case cited is placed on three grounds: (1) That the assessment under which Delano's payment was made was made "by the stockholders themselves, by almost unanimous vote, paid into the general funds of the bank, as a further investment in the capital stock, and disposed of by its officers in the ordinary course of business;" (2) that such payment might, or might not, have been applied to the payment of credit-

ors, (the record being silent as to this), and the court saying that "in the ordinary course of business it certainly would not be applied, as in case of liquidation, to the payment of creditors ratably;" and (3) that "under section 5151 the individual liability does not arise, except in case of liquidation, and for the purpose of winding up the affairs of the bank;" and the "equal and ratable" assessment provided for by section 5151 is (only) for the protection of those who may be creditors at the time of liquidation, is not voluntary, "and can be applied only to the satisfaction of the creditors ratably." For these reasons the court held that "the obligations of the shareholders under the two sections are entirely diverse, and payments made under section 5205 cannot be applied to the satisfaction of the individual responsibility secured by section 5151," citing Scoville v. Thayer, 105 U. S. 143, in which no such question was, in any manner, involved.

It is noticeable that none of the cases in the numerous state courts were referred to in the briefs of counsel in the Delano case, or, apparently, examined or considered by the court, though, as already suggested, the essential differences between the Federal statute and the corporation statutes or constitutional provisions of the several states may account for the apparent overlooking of these decisions.

Under the national bank law (section 5151) the shareholders are to be "held individually responsible equally and ratably, and not one for another, for all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares," but this liability is solely for the benefit of those who may be creditors at the time of liquidation, and does not exist or arise (as held in the Delano case, and other cases), until after the bank has gone into liquidation under section 5220, or after the appointment of a receiver by the comptroller of the currency under section 5234.

It is quite logical and reasonable to say that a payment made at a time when no liability existed, under section 5151, and which may have been applied, so far as appears, to purposes quite remote from an equal and ratable distribution among the persons who may be

creditors at the time of liquidation, and for whose exclusive benefit, the liability under section 5151 was created, cannot properly be credited on such liability when it subsequently arises. Under the Minnesota Constitution, however, as construed in many decisions of our court, the shareholder's liability attaches and exists from the moment of his purchase of stock, and, until recently, at least, might be enforced by any creditor, without waiting for general liquidation, so that the reasoning of the Delano case, on this point, is clearly inapplicable.

*O'Brien, Young & Stone,* for respondent.

BROWN, J.

The State Bank of St. Paul was a banking corporation duly created and existing under the laws of this state, the stockholders of which were subject to the liability created by section 3 of article 10 of the state Constitution. In January, 1908, the public examiner found the affairs of the bank somewhat impaired, and he ordered and directed the officers thereof to levy a stock assessment of fifty per cent. The directors of the bank duly complied with the order. Before the same was paid, however, further investigation resulted on January 18 in an order temporarily closing the bank, and on January 27 the examiner made a new order to the officers of the bank in the following language, namely:

"A thorough examination of the State Bank of St. Paul has just been completed, and the capital stock of the same found to be impaired to such an extent that an assessment of one hundred per cent is found necessary. You will therefore make such assessment and proceed to collect the same immediately, pursuant to section 3000, R. L. 1905, to the end that all depositors may be fully secured and that the bank may be continued in business."

The directors of the bank then rescinded the former fifty per cent assessment and made a new one for one hundred per cent, as required by this order.

Defendant in this action was not a stockholder of the bank when

this assessment was levied, but became such soon thereafter, in the following manner: At the time the assessment was levied one Drew, a bankrupt, was the owner and holder of one hundred ninety shares of the stock, which was held by his receiver in bankruptcy. Defendant and others associated with him, acting through one Haas, purchased one hundred thirty-two shares of that stock from the receiver for the sum of $50, and it was divided among the several purchasers; defendant receiving twenty-five shares, of the par value of $100 each. The purchase of the stock was with full notice and knowledge of the situation at the bank and of the assessment levied upon the stock pursuant to the orders of the public examiner. Defendant and the other holders of the stock thereafter paid the assessment in full, and the bank reopened its doors for the transaction of its business, and thereafter continued a general banking business until September, 1908, when the public examiner again ordered the bank closed, and upon his application plaintiff herein was duly appointed receiver to wind up its affairs; it being found insolvent.

On April 13, 1909, on the receiver's application, the court below, under section 3, article 10, state Constitution, ordered an assessment of one hundred per cent upon the stock of the bank, and directed the receiver to proceed and collect the same for the benefit of the creditors. It further appears that, though the purpose of the assessment made pursuant to the order of the public examiner was to enable the bank to resume business, the funds derived therefrom were applied in payment of the bank's debts, as represented by the claims of depositors and others, and that there was no substantial change in the personnel of the creditors between that date and the final closing of the bank, though there were a few new depositors after the reopening of the bank.

This proceeding was instituted by the receiver to enforce payment of the assessment ordered by the court in the insolvency proceedings, and defendant interposed in defense the payment of the assessment ordered by the public examiner, the payment of which he insists fully discharged his constitutional liability. Whether this contention be sound presents the only question involved in the case. The court

below ordered judgment for plaintiff, and defendant appealed from an order denying a new trial.

. The argument of counsel in support of the contention that defendant's liability was fully discharged by the payment of the assessment ordered by the public examiner proceeds upon the theory: (1) That the payment was compulsory, for the benefit of creditors, and the result of the order of the public examiner; and (2) that, whether voluntary or involuntary, the defendant's liability was discharged, because the assessment was applied to the payment of the debts of the bank.

1. The constitutional liability of stockholders in banking corporations was designed solely for the benefit of creditors, and constitutes a fund available only when the bank is insolvent and unable to meet its obligations in full. The corporation itself has no authority over the fund, cannot compel its payment, nor by any act on its part release the stockholders therefrom. It amounts for all practical purposes to a reserve or trust fund, to be resorted to only in proceedings in liquidation, when necessary to meet the payment of obligations of the corporation. It is limited to an amount equal to the par value of the stock held and owned by each stockholder, and exists in favor of the creditors collectively, not severally, and in proportion to the amount of their respective claims against the corporation. No single creditor can enforce payment of his debt against any one or more of the stockholders, because he has no several or independent right to the fund. There was a time, no doubt, as shown by many of the authorities cited by defendant, when the diligence of creditors and preferential payments by insolvents were favored by the law, at least not condemned; that individual creditors were permitted to proceed against a particular stockholder and compel payment by him of his entire debt, to the extent of the limited stock liability. Dodge v. Minnesota Plastic Slate Roofing Co. 16 Minn. 327 (368). But such is not now the law in this state. The decision in that case was rendered before the law upon the subject had become fully developed, and the precise point here under discussion does not seem to have been raised.

Since the decision was handed down in the case of Allen v. Walsh, 25 Minn. 543, the law applicable to the enforcement of this liability has been in harmony with the general equitable principles governing the sequestration and distribution of trust funds. By that decision it was declared that the liability could only be enforced in proceedings brought for that purpose in behalf of all the creditors, and that this, being the remedy prescribed by statute, was exclusive. Though an apparent departure therefrom, the conclusion was fully justified by changes and amendments of the statutes subsequent to the decision in the Dodge case, and it has been uniformly followed and applied in all later decisions. 1 Notes to Minnesota Cases, 1239, and cases there referred to.

Nor was the decision in the Walsh or any of the subsequent cases predicated upon the general rule that, where a statute creates a right and prescribes a remedy for its enforcement, the remedy so provided is exclusive. It was held in all the cases referred to that the general statute applicable to winding up the affairs of corporations applies to all classes of corporations, and furnishes the exclusive remedy for the enforcement of the stockholder's liability. McKusick v. Seymour-Sabin & Co. 48 Minn. 158, 50 N. W. 1114; Winnebago Paper Mills Co. v. Northwestern Printing & Publishing Co. 61 Minn. 373, 63 N. W. 1024.

The case of Patterson v. Stewart, 41 Minn. 84, 42 N. W. 926, 4 L.R.A. 745, 16 Am. St. 671, and the case of Nolan v. Hazen, 44 Minn. 478, 47 N. W. 155, are not in point. The Patterson case did not involve the stockholder's liability. The action was predicated upon section 23, c. 11, p. 126, Laws 1873, which provided that, if any corporation organized thereunder should violate any of its provisions, the directors ordering or assenting to the violation should be jointly and severally liable for all debts contracted after the violation occurred. The statute created a special liability, unlimited, and it extended to the full amount of the claim of each creditor independently, and not a limited liability, in which all creditors were jointly interested. The same situation was presented in the second case just

cited. They do not apply, and are in no proper view a departure from the doctrine and rule of the preceding Walsh case.

So we are confronted with the general doctrine, repeatedly affirmed. by the court, that the liability here involved can be enforced only in proceedings instituted for that purpose in behalf of all creditors, and that that remedy is exclusive of all others. From this situation of the law it would seem logically to follow that a stockholder cannot, by the voluntary payment of the full quota of his liability to a particular creditor or set of creditors, discharge his further responsibility. If that course were permissible and effectual, it would lead to confusion, in preferences, and to inequitable and unjust results. A trust fund designed for the benefit of all creditors would be thus unfairly distributed, and those most deserving, perhaps, deprived of the benefit the law intended to confer upon them, and the purposes of. the law creating the liability wholly defeated. So we do not sustain the right of a creditor to so discharge his obligations.

We do not overlook the fact that many of the authorities cited by defendant sustain his view of the question. But they are not in harmony with the present policy of the law, and the rule invoked does not apply in any of the states where the liability is treated, as in this state, as a trust for the benefit of creditors without discrimination. 3 Clark & Marshall, Corporations, 2582.

Nor can it be held that the payment of the assessment made pursuant to the order of the public examiner operated as a discharge of the liability. This order was issued under and pursuant to the authority conferred by provisions of section 3000, R. L. 1905, which provides, in substance and effect, that whenever the capital of a banking corporation shall become impaired the officers thereof shall, within ninety days after receiving notice from the public examiner, make up the deficiency by a pro rata assessment on the capital stock, or go into liquidation. Section 3002 further provides that if any stockholder shall refuse to pay the assessment so ordered his stock may be sold in the manner directed.

Previous to the order by the public examiner his investigation into the affairs of the bank brought to light a material impairment of the

bank's capital, and a compliance with the order for the assessment was a condition upon which the bank might reopen its doors and resume business. It was not a proceeding in the interest of creditors, but rather to place the bank in position for the future transaction of business. And whether the payment thus required to be made was voluntary or involuntary, it served its primary purpose, and on the funds thus acquired the bank was able to reopen its doors.

The contention of defendant that, to construe this statute as not a compulsory proceeding resulting, upon the payment of an assessment made thereunder, in the discharge of the constitutional liability of the stockholder, would render it invalid as in violation of constitutional rights, is not sound.

The business of banking so materially and vitally affects the general public interests as to make it a proper subject for complete legislative regulation and control. The sole purpose of this statute was to vest in the public examiner supervisory control over such institutions, and by timely action to prevent the impairment of their funds, to the injury and loss of depositors and others, and to keep and maintain them so far as practicable upon a safe and sound financial basis. That the power to so provide is within legislative discretion we have no doubt. Noble State Bank v. Haskell, 219 U. S. 104, 31 Sup. Ct. 186, 55 L. ed. 112, 32 L.R.A.(N.S.) 1062. The proceedings of the examiner were not in the interests of creditors, but to enable the bank to continue its business; and, though the funds thus acquired were applied to the payment of creditors, it must be held, unless we are to open the door leading to a defeat of the purposes of the Constitution in creating the liability, that the payment of the public examiner's assessment did not operate to discharge the liability. This view is sustained by Delano v. Butler, 118 U. S. 634, 7 Sup. Ct. 39, 30 L. ed. 260.

It is true, as urged by counsel, that the stockholder is liable but once. He cannot be compelled to pay a second time. But this case does not present a situation of that kind, and it is unlike the case of Hunt v. Roosen, 87 Minn. 68, 91 N. W. 259. There the assessment was made under authority of a judgment of the court in proceedings

to wind up the affairs of the bank, and the judgment expressly provided that the payment should release pro tanto the constitutional liability. The bank there involved did not continue in business, and the sole purpose of the assessment was to enable the officers to pay and discharge all existing debts and obligations. The case is not in point.

Order affirmed.

PHILIP E. BROWN, J., being absent on account of illness, took no part.