L. A. ANDREW, State Superintendent of Banking, Appellant, v. FARMERS TRUST & SAVINGS BANK OF CHARLES CITY et al., Appellees.

BANKS AND BANKING: Insolvency—Stockholders—Double Liability Not Subject to Offset. Funds voluntarily paid into a bank by a stockholder thereof, in order to *repair or make good the impaired capital* of the bank while it is a going concern, may not later, after the bank has gone into the hands of a receiver for liquidation because of insolvency, be set off by the stockholder against the demand of the receiver for a 100-per-cent statutory assessment on the stock *for the benefit of creditors.*

Headnote 1: 7 C. J. p. 517.

Headnote 1: 23 A. L. R. 1354; 3 R. C. L. 398.

*Appeal from Floyd District Court.—C. H. KELLEY, Judge.*

MAY 10, 1927.

REHEARING DENIED OCTOBER 1, 1927.

Action in equity, by the receiver of an insolvent bank, to recover a 100-per-cent. assessment on bank stock, against the individual owners thereof. The trial court, under the facts stated in this opinion, determined and decreed a 50-per-cent assessment against all stockholders who had, prior to the closing of the bank, paid a 50-per-cent assessment levied and collected under a resolution by the directors of the said bank. The superintendent of banking of the state of Iowa, as receiver, appeals.—*Reversed.*

*John Fletcher,* Attorney-general, and *Joseph C. Campbell,* for appellant.

*R. W. Zastrow, Frank K. Nies,* and *W. G. Henke,* for appellees.

DE GRAFF, J.—This appeal presents but one question for decision: Is a stockholder of a bank who, in response to a resolution by its board of directors, has paid a 50-per-cent assessment, prior to the closing of the bank, in order to make good the impairment of its capital, entitled to a credit therefor on a 100-per-cent assessment subsequently sought to be levied by the receiver of the bank in conformity to statutory provisions? The question must be answered in the light of the record facts and the interpretation to be given to the language of the statute. The statutory provision reads:

"All stockholders of savings and state banks shall be individually liable to the creditors of such corporation of which they are stockholders over and above the amount of stock by them held therein and any amount paid thereon, to an amount equal to their respective shares, for all its liabilities accruing while they remained such stockholders." Section 9251, Code of 1924.

This statute is similar to a provision of the Constitution of Iowa. Article 8, Section 9. The constitutional provision, how-

ever, applies only to banks of issue. *Allen v. Clayton*, 63 Iowa 11. The statutory provision applies only to banks of discount or deposit, and this suggests the reason for the enactment of the statute. Section 1882, Code of 1897 (Acts of the Eighteenth General Assembly, Chapter 208, Section 1).

What are the record facts in the instant case? The Farmers Trust & Savings Bank of Charles City, Iowa, was a banking corporation organized under the laws of Iowa. The doors of said bank were closed January 5, 1925, and the superintendent of banking of Iowa was appointed, and duly qualified, as its receiver.

In the latter part of the year 1922, an examination of the affairs of the bank had been made by the superintendent of banking, and in his report it was pointed out that certain described bills receivable and other assets of the bank were of doubtful value; and on the 17th day of December, 1922, a written agreement was entered into between certain officers, directors, and stockholders of the bank and the bank, whereby the parties whose names were signed to said instrument "jointly and severally" promised to "guarantee payment on or before five years from this date of each and every of said bills receivable, or any renewals of the same," identified and attached to said written agreement, aggregating $67,911.08.

Subsequently, and in the month of August, 1924, the bank superintendent again found the affairs of the bank in a precarious condition, and, on August 26, 1924, wrote a letter addressed to the board of directors of the Farmers Trust & Savings Bank, in which letter attention was called to the facts disclosed by his examination and investigation, and specific information was given the board of directors as to the matters which should claim and receive "very careful attention on your part in the future." These matters had reference to excess loans, rediscounts of a certain life insurance company, paper rediscounted by the bank, replacement of certain named bad and doubtful assets, the guaranty of all the directors on certain lines of credit, and that certain other lines were to be adequately secured. The letter continues:

"To meet the loss herein established it is recommended that an assessment of 50 per cent be raised by the stockholders voluntarily, thus enabling you to leave your surplus intact, and as an

alternative to that, it is suggested that the entire directory board purchase the assets in question without recourse upon the bank, and that their combined promissory notes be acceptable for such part of the purchase price as they do not choose to pay for."

There was a meeting of the board of directors on October 7th, when the entire matter was under discussion. In speaking of this meeting, Vice President Beardmore, who was a member of the board, testified:

"It seemed to be the sense of the banking department that a voluntary assessment should be made, rather than that the guarantee should be signed up again."

The board at that time passed the following resolution:

"An assessment of 50 per cent of the capital stock be made in the way of a voluntary contribution if possible, said assessment being payable on or before November 1, 1924."

Beardmore testified:

"I never knew of any communication, being sent out by the bank, wherein it was represented that this was a legal enforced assessment. I understood it to be a voluntary assessment, as stated in the resolution."

On October 20, 1924, a written notice of this assessment was sent to the stockholders, which notice was signed by G. A. Wentland, cashier of the bank. There was no written instruction or order by the board of directors as to the application of the 50-per-cent voluntary assessment. The notice of assessment was given to each stockholder, and notified him of the action of the board of directors, and that an assessment of 50 per cent per share was levied upon the capital stock of said bank, payable on or before the first day of November, 1924, to the undersigned cashier of the bank, at its banking office in Charles City, Iowa. The notice also recited:

"You are hereby notified further that any stock on which this assessment shall remain unpaid on the first day of November, 1924, will be deemed delinquent and shall be subject to sale as by law in such cases provided."

The capital stock of this bank was $60,000, and the 50-per-cent assessment resulted in the payment of $28,000. This sum was carried on the books of the bank under the heading "Depreciation." It was the declared intent of the banking department to have this voluntary payment used to take up worthless paper.

How it was expended is not disclosed by the record, nor was the banking department advised in this particular.   The cashier testified:

"I didn't receive any instructions to apply it.   The money was to be used to take care of weak paper, in accordance with a letter of Mr. Foster [deputy superintendent of banking]."

It does appear that, at the time the bank closed, the cash on hand was $7,000.   It further appears that the bank continued to operate and perform usual banking functions until it was closed by the action of the superintendent of banking, on January 5, 1925.

It is true that some of the defendant-stockholders testified that it was a compulsory assessment, but this claim does not make it so.   The evidence establishes the fact that it was a voluntary payment on the part of the stockholders.   It is also urged by some of the objecting defendants that pressure was used by some of the bank officers to secure the payment of the assessment, and that certain representations were made that were not strictly in conformity with the facts or the law.   These matters are immaterial in the decision of the question before us.

It apparently was the understanding of Vice President Beardmore, from his conversation with the deputy superintendent of banking, that the directors would try to secure the 50-percent assessment as a voluntary assessment, and he testified:

"If we succeeded in getting it along, then the order—they would not make the order. * * * Well, we understood that, if we didn't get it all in, the department would make the order, and that this money which had been paid in would then be applied upon the assessment ordered by the department, so that they would only be assessed 50 per cent once,—if they paid one voluntary assessment, and the department had to make the order, then that we would get credit on the assessment ordered by the department."

The banking department never did make an order for an assessment.

It was stipulated upon the trial that, at the time the receiver was appointed, the bank was insolvent, and that such condition continued thereafter, and that the difference between the assets and liabilities was $100,000, and that it was necessary to enforce an assessment of 100 per cent against all the said stockholders.

On July 10, 1925, the receiver, by a petition filed herein, prayed that an assessment of 100 per cent be assessed against each of the stockholders, and that each stockholder should be liable for same.

It may first be observed that the so-called 50-per-cent assessment, voluntarily levied, is not within the purview of statutory provisions. The statutory liability (Section 9251, Code of 1924) of stockholders in banking corporations, as they now exist, is designed for the benefit of creditors, and has for its object the creation of a fund available only when the bank is insolvent and unable to meet its obligations in full. See 3 Ruling Case Law 398, Section 27. The fund is for the payment of all the corporate debts of the bank after its assets are exhausted. If it is insufficient to pay all the debts, it must be distributed among the creditors according to the established principles of equity. *State ex rel. Stone v. Union Stock Yards St. Bank,* 103 Iowa 549. The stockholders' liability is to creditors, and not to the corporation.

It is plain that, under Sections 9246 to 9250, inclusive, Code of 1924, an impairment of the capital of a bank shall be made good. The action of the banking department of the state in these particulars is for the purpose of enabling the bank to continue banking operations. The superintendent of banking had the authority to determine whether the instant bank should continue its functions under the conditions which confronted it in 1922 and 1924 or liquidate its affairs. He did require the impairment of capital to be made good, but the plan or method was left to the determination of the bank, through its accredited officers. The restoring of the impaired capital was for the sole purpose of permitting the bank to continue in business. It thereby protected the investment of the stockholders in the stock of said bank. There was no compulsion in the matter in the first instance. The statute provides:

"Should the capital stock of any state or savings bank become impaired by losses or otherwise, the superintendent of banking may require an assessment upon the stockholders, and shall address an order to the several members of the board of directors of such bank, fixing the amount of the assessment required." Section 9246.

This was not done in the instant case. The superintendent of banking merely pointed out what could be done, or he would close the bank. It was optional with the board of directors what

action should be taken.   The board did act, but on its own initiative as to the method to be adopted.

The statute (Section 9247) further points out what shall be done in the event that the superintendent of banking orders an assessment upon the stockholders to remedy the impairment of the bank's capital; but this matter is not material to our present inquiry, since the superintendent of banking did not order the 50-per-cent assessment.   The statute further provides how and when an assessment made under order of the superintendent of banking shall be enforced.   Section 9248, amended by Chapter 181, Acts of the Forty-first General Assembly.

It is also provided by statute that, in the event that the board of directors of any bank whose capital has become impaired refuses to act for a period of 30 days after the receipt of such order for assessment from the superintendent of banking, the directors shall become severally liable for any deficiency, which liability may be enforced at law by any creditor of or stockholder in the bank, or by a receiver appointed to wind up its affairs.   Section 9250.

A banking corporation cannot release its stockholders from statutory liability.   A stockholder who is sued for the enforcement of his statutory liability for the debts of the bank cannot escape or reduce his liability by asserting any claim which he may have against the bank.   7 Corpus Juris 517, Section 108; *Parker v. Carolina Sav. Bank,* 53 S. C. 583 (31 S. E. 673, 69 Am. St. 888).

A stockholder cannot set off his deposit in the bank against his unpaid subscription.   *Williams v. Traphagen,* 38 N. J. Eq. 57.   Nor may he set off the bank's debt to him against his statutory liability.   *Barnes v. Arnold,* 45 App. Div. 314 (61 N. Y. Supp. 85).   See, also, *Sheafe v. Larimer* (C. C.), 79 Fed. 921; *Sowles v. Witters* (C. C.), 39 Fed. 403; *Fowler v. Robinson,* 31 Me. 189.

In *Northwestern Tr. Co. v. Bradbury,* 117 Minn. 83 (134 N. W. 513, Ann. Cas. 1913D 69), it is said:.

"It [the fund] amounts, for all practical purposes, to a reserve or trust fund, to be resorted to only in proceedings in liquidation, when necessary to meet the payment of obligations of the corporation.   It is limited to an amount equal to the par value of the stock held and owned by each stockholder, and exists

in favor of the creditors collectively, not severally, and in proportion to the amount of their respective claims against the corporation. No single creditor can enforce payment of his debt against any one or more of the stockholders, because he has no several or independent right to the fund.''

It is true that there was a time (and there are authorities to sustain the contention) when the diligence of creditors and preferential payments by insolvents were favored—at least not condemned—by the law, and individual creditors were permitted to proceed against a particular stockholder and compel payment by him of his entire debt, to the extent of the limited stock liability. This is not the rule in this state.

We have held that the personal and individual liability imposed by statute (Section 8380, Code of 1924) on the corporate directors and officers for corporate debts to which they have knowingly consented, and which are in excess of the indebtedness permitted by law, is a liability which is enforcible, not by action at law by each creditor in piecemeal, and against one or more or all offending officers and directors, but by an action in equity for and on behalf of all creditors, wherein may be adjudicated, once for all, the extent of liability of each defendant and the extent of right of each creditor. *Platner v. Hughes,* 200 Iowa 1363 (43 A. L. R. 1141). So here, the liability involved can be enforced only in proceedings instituted for that purpose on behalf of all creditors, and that remedy is exclusive. It logically follows that a stockholder cannot, by the voluntary payment of the full or partial quota of his liability to a particular creditor or several creditors, discharge his responsibility in the premises. See 7 Corpus Juris 510, Section 84.

In the *Northwestern Tr. Co.* case, supra, it is further said:

''We do not overlook the fact that many of the authorities cited by defendant sustain his view of the question. But they are not in harmony with the present policy of the law, and the rule invoked does not apply in any of the states where the liability is treated, as in this state, as a trust for the benefit of creditors, without discrimination.''

And, as here, an investigation into the affairs of the bank brought to light a material impairment of the bank's capital, and its restoration was a condition upon which the bank might continue to operate. This step was not taken in the interest of cred-

itors, but rather to place the bank in a position for the further transaction of business.   We may assume that the assessment, under resolution of the board of directors, served its primary purpose; but, as stated, there is no proof in the case for what specific purpose the assessment was used.   We cannot assume that the payment of money by a stockholder to a corporation to meet its ordinary functions as a bank imports that it was used to pay debts for which the stockholder is liable under statutory provisions.   A claim against the corporation does not exist in the same right or interest as a claim against a statutory fund arising from the enforcement of the stockholders' liability.

We cannot accept the viewpoint of the defendants that the 50-per-cent assessment was a compulsory or statutory assessment, the payment of which effected the discharge *pro tanto* of the liability of the respective stockholders.

We recognize that the business of banking vitally affects public and private interest.   The superintendent of banking is vested with supervisory control of banking corporations, and it is his duty, by timely action, to correct the impairment of the capital of the bank, thereby protecting depositors and others, and preventing loss.   It is his duty to keep and maintain banks, so far as practicable and possible, on a safe and sound financial basis.

It is true, as urged by counsel for the defendants herein, that a stockholder is liable but once.   He cannot be compelled to pay a second time; but, to invoke this rule, due regard must be had to the facts in a given case.   The so-called assessment under the resolution of the board of directors was essentially different in its purpose and scope from the liability attempted to be enforced in the instant action.

The pertinent question asked by the defendants herein is: Why should the rule be different where the payment is made voluntarily, and without waiting for statutory proceedings?   The answer is that the voluntary payment was not made under the statute, for the purposes contemplated by the statute.   See *Page v. Jones* (C. C. A.), 7 Fed. (2d Series) 541; *Huff v. Page* (C. C. A.), 2 Fed. (2d Series) 544.

The question now before us, which was also presented in the *Northwestern Tr. Co.* case, supra, has found answer in several courts of last resort.   It is held in *Citizens Bank of Lane v. Need-*

*ham,* 120 Kan. 523 (244 Pac. 7), that an assessment of bank stock to make good an impairment of capital and an assessment on stockholders under the double liability provision subserve entirely distinct and wholly different purposes, since one is an incident of operation, and the other is an incident of liquidation. See, also, *Farmers St. Bank v. Reed,* 114 Kan. 216 (217 Pac. 320).

It is said in *Delano v. Butler,* 118 U. S. 634 (30 L. Ed. 260) :

"The assessment imposed upon the stockholders by their own vote, for the purpose of restoring their lost capital, as a consideration for the privilege of continuing business, and to avoid liquidation under Section 5205 of the Revised Statutes, is not the assessment contemplated by Section 5151, by which the shareholders of every national banking association may be compelled to discharge their individual responsibility for the contracts, debts, and engagements of the association. * * * The obligations of the shareholders under the two sections are entirely diverse, and payments made under Section 5205 cannot be applied to the satisfaction of the individual responsibility secured by Section 5151."

See, also, *Williams v. Rose* (D. C.), 218 Fed. 898; *Scovill v. Thayer,* 105 U. S. 143 (26 L. Ed. 968).

In *Duke v. Force,* 120 Wash. 599 (208 Pac. 67, 23 A. L. R. 1354), it is held that the superadded liability of bank stockholders to the extent of the par value of their stock under the provision of the state Constitution attaches only upon the bank's liquidation, and that the legislature may provide for the maintenance of the capital of a bank unimpaired by statutes such as the Banking Act, requiring the replacement of impaired capital by the stockholders. It is also held that claims against an insolvent bank cannot be set off against the superadded liability of the stockholder.

In *Chapman v. Hopper* (Tex. Civ. App.), 261 S. W. 166, the principle is affirmed that the legal assessment of stockholders, such as a state commissioner of banking can make, can only be made after a liquidation of the bank's affairs begins, and that a payment by a stockholder, as an assessment on his stock in advance of a legal assessment, is not a legal payment.

In *Markus v. Austin* (Tex. Civ. App.), 284 S. W. 326 (May

19, 1926), it is held that payments made for the purpose of restoring impaired capital of a bank cannot be offset against the assessment of stockholders of an insolvent bank to discharge its indebtedness in course of liquidation.

It is held in *Blackert v. Lankford,* 74 Okla. 61 (176 Pac. 532), that, where the capital stock of a banking corporation has become impaired, and an assessment against the stockholders is ordered, under Section 288, Revised Laws of Oklahoma, 1910, to enable the bank to continue business, the payment of such assessment and the resumption of the business by the bank does not in any manner affect or discharge the stockholders from their original statutory liability for the debts of the bank upon its subsequent insolvency, and that the latter liability is designed solely for the benefit of the creditors, and constitutes a fund available only when the bank is insolvent and unable to meet its obligations in full.

Creditors and depositors are not responsible for the management of the bank or the conduct of its business, nor is the impairment of its capital or its subsequent insolvency chargeable to them. A stockholder of a bank under no circumstances may be viewed as preferred, and he may not, by a voluntary payment to enable the bank to keep open its doors, discharge his liability as defined by the provision of the statute quoted in the first part of this opinion.

With this view of the law applicable to the facts, the decree of the trial court must be, and is,—*Reversed.*

All the justices concur.