SMITH *et al. v.* MOBLEY, superintendent of banks.

1. Under a proper construction together of articles 6 and 7 of the banking laws (Ga. Laws 1919, p. 135), stockholders of a banking company have the privilege of declining to levy assessments under article 6 to make good the impairment of the capital stock thereof after notice by the superintendent of banks, and of electing instead to allow the bank to be liquidated and to submit to an assessment made by the superintendent under article 7 of said banking laws.

2. It may be argued that under the allegations of the petition a cause of action was set up, sufficient to require the officers and directors of the bank to call a meeting of the shareholders for the purpose of requiring them to elect whether or not they would vote assessments to make good such impairment; that this is true notwithstanding the fact they might vote to refuse such assessments. The reply in this case is that under the allegations of the petition the bank was already in process of liquidation when the petition was filed. The banking company had sold its banking house, furniture and fixtures, and some if not all of its remaining assets, and had contracted with the Bank of Valdosta to pay off its depositors, and, upon completion of the contract, not to again engage in the banking business. In these circumstances it would be vain and useless to require stockholders to be called together for the purpose of making a decision which they had already made.

No. 6187. APRIL 11, 1928.

Mandamus.     Before Judge Custer.     Lowndes superior court. July 29, 1927.

*C. L. Smith* and *Copeland & Dukes,* for plaintiffs in error.

*E. K. Wilcox, Branch & Snow,* and *T. G. Connell,* contra.

GILBERT, J. The superintendent of banks filed a petition in 1924 against the officers and directors of the Southern Bank &

Trust Company, alleging that said company was a bank under the act creating the State department of banking (Ga. Laws 1919, p. 135) ; that said company owed debts aggregating some $85,000 besides interest, which it was unable to pay; that to this extent its capital stock was impaired, to remedy which there was no surplus or undivided profits; that petitioner had in writing notified said company to make good the impairment within sixty days, in accordance with said act (article 6, sections.1 and 2), which had been refused; and that a similar second notice had been refused. The petition was amended, alleging that in 1920 said Southern Bank & Trust Company had entered into a contract with the Bank of Valdosta, by which it agreed, among other things, to sell to the Bank of Valdosta all of its assets, including its banking house and fixtures, cash on hand and in other banks; that said Bank of Valdosta should assume specified obligations of the defendant bank, including the payment of depositors, and that said defendant bank would liquidate, and after the completion of the transaction would not engage in the banking business. The petition prayed for a mandamus nisi directed to the officers and trustees of said company, whose names were set out, that they show cause why they should not be required to call a special meeting of stockholders for the purpose of making an assessment upon said stockholders, sufficient to cover said impairment, and that upon a hearing a mandamus absolute to this effect be granted. The officers and directors of said bank, as the respondents to said petition, demurred thereto on the grounds that no legal or equitable cause was set forth; that the remedy of mandamus did not lie; that no official obligation upon respondents was shown; that petitioner had a legal remedy if any at all; that the State banking act approved August 16, 1919, was unconstitutional, null and void, because section 2 of article 6 thereof violated the constitutional provision against laws or ordinances referring to more than one subject-matter or containing matter different from what was expressed in the title thereof; that the petition showed no matter not discretionary with respondents; that said section 2 of article 6 of said banking act, if valid at all, referred only to banking institutions which were going concerns, whereas the petition failed to allege that said bank was engaged in business; that the petition failed to show for whose benefit it was brought, whether stockholders or creditors;

and that it failed to show to whom any indebtedness was due. The court overruled the demurrer to the petition as amended, and to this judgment the respondents excepted.

The following sections of the banking law (Ga. Laws 1919, p. 135) must be construed in order to arrive at a correct decision of the case. They are quoted with subsection titles as they appear in the printed act.

"ARTICLE VI. IMPAIRMENT OF CAPITAL.

"Section 1. *Transfer of Surplus.*—Whenever the Superintendent of Banks shall find that the capital stock of any bank has become impaired or reduced as much as ten per cent. of its par value from losses or any other causes, the Superintendent of Banks shall notify and require such bank to make good its capital stock so impaired or reduced, by a transfer, from the surplus or undivided profits thereof to the capital stock, of a sum sufficient to make good such impairment or reduction; and upon receipt of such notice such bank so notified shall immediately make the transfer so required, by proper corporate action and proper entries upon its books.

"Sec. 2. *Assessment of Stockholders.*—If the surplus and undivided profits of such bank are insufficient to make good such impairment, the Superintendent of Banks shall notify such bank to make good the impairment within sixty (60) days, by an assessment upon the stockholders thereof; and it shall be the duty of the officers and directors of the bank receiving such notice to immediately call a special meeting of the stockholders for the purpose of making an assessment upon its stockholders, sufficient to cover the impairment of the capital, payable in cash, at which meeting such assessment shall be made, *Provided,* that such bank may reduce its capital to the extent of the impairment, if such reduction will not place its capital below the amount required by this Act."

Section 3 under this article provides a method of procedure for enforcing assessments upon shareholders when made according to the provisions of sections 1 and 2.

"ARTICLE VII. TAKING POSSESSION OF BANK BY
SUPERINTENDENT.

"Section 1. *Possession may be taken, when.*—Whenever it shall appear to the Superintendent of Banks that any bank has violated

its charter or any law of the State, or any law or regulation of the Department of Banking, or is conducting business in an unsafe or unauthorized manner; or that its capital is impaired more than ten per cent. below its par value *and has not been made good under the requirement of the Superintendent,* . . or when any bank shall suspend payment of its obligations, . . or when any bank shall neglect or refuse to observe any lawful order of the Superintendent directing or requiring the doing of any particular matter or thing required to be done by law, the Superintendent himself, or by a duly authorized agent, shall forthwith take possession of all the assets and business of such bank and retain possession thereof until such bank shall be authorized by him to resume business, or its affairs be liquidated as herein provided."

Section 20 of Article VII reads in part as follows: *"Assessment of Stockholders.*—Within ninety (90) days after the Superintendent of Banks has taken possession of the assets and business of any bank, as in this act authorized, he shall make a careful estimate of the value of the cash assets of said bank which can probably be converted into cash within one year after so taking possession of the assets and business of said bank, and of the amount of such cash assets which will be available to pay depositors; and he shall immediately thereupon make an assessment upon the stockholders of said bank sufficient, when added to the cash assets so available for depositors, to pay the said depositors in full; provided that such assessment shall not exceed the liability of stockholders upon their said stock."

It will be observed from the sections of the banking act quoted that there are two provisions for making assessments upon stockholders. One is under article 6, by which stockholders may be assessed whenever and as often as it may be made to appear that the capital stock of the bank has become impaired or reduced as much as ten per cent. of its par value from losses or other causes. In such event it becomes the duty of the superintendent of banks to notify and require such bank to make good the impairment. The superintendent is required to notify the bank of the necessity of making such assessment; whereupon it becomes the duty of the officers and directors of the bank to call a special meeting of stockholders for the purpose of making the assessment. Neither the superintendent nor the directors can make the assessment pro-

vided for under article 6; it is a matter for the stockholders them-
selves to determine. There is no absolute right imposed by law
in the superintendent to compel the stockholders to make the
assessments so provided. Section 2 of that article expressly pro-
vides "that such bank may reduce its capital to the extent of the
impairment, if such reduction will not place its capital below
the amount required by this act." Thus it appears that the Gen-
eral Assembly foresaw that instances might arise where stock-
holders of banks might find impairment but be unwilling to in-
vest additional capital, for perfectly sound reasons. For example,
it might appear to them that the capital stock of the bank was
unnecessarily large, that it might meet the requirements of busi-
ness better by reducing it, or that after sufficient experience it had
been determined that there was insufficient support and patronage
to continue the bank at all, which might be due to competition
where banking facilities in the community were over provided, or
that general shrinkage of business pointed to the wisdom of liqui-
dation. Whatever may be the reason, the act contemplates that
the stockholders might refuse to make good the impairment in
the capital stock of the bank, as provided for in article 6. In
such event the duty of the superintendent is expressly stated in
the act. His duty is stated in article 7, the subject title of which
is "Taking Possession of Bank by Superintendent." Where such
impairment of the capital stock is not made good, it becomes the
duty of the superintendent to take possession of all assets and re-
tain them (1) until such bank shall be authorized by him to resume
business, or (2) until its affairs can be liquidated as provided in
the act. Under section 1 of article 7 the superintendent is au-
thorized to make an assessment upon shareholders. This assess-
ment can be made only once, where the banking company has de-
cided to cease doing business, and then for the purpose of liquida-
tion. In Park's Georgia Banking Laws, 24, the author states
that section 1 of article 6 of the banking law "is intended to
provide against a bank with an impaired capital continuing to
claim a surplus or undivided profits." It may be confidently as-
serted also that another purpose of this act was to prevent a bank
with impaired capital stock from continuing to invite patronage of
the public who may not be aware of such impairment. The author
of the above work refers to section 2 of article 6 as follows: "This

section substantially reenacts Code, § 3391, reducing the time within which the impairment shall be made good from ninety to sixty days. The original section followed the National Bank Act, § 5205 U. S. R. S., § 9767 U. S. Comp. Stat." These statements from the lawyer generally credited with being the framer of the banking law now in operation in this State appear obviously true from a thorough examination of the banking law itself.

The United States Supreme Court, construing section 5205 of the Revised Statutes above referred to, ruled that said section "is intended to, and does, confer upon a national banking association the privilege of declining to make the assessment to make good a deficiency in the capital after notice by the Comptroller of the Currency so to do and to elect instead to wind up the bank under § 5220." Commercial Nat. Bank v. Weinhard, 192 U. S. 243 (24 Sup. Ct. 253, 48 L. ed. 425). For further discussion of the subject, reference is made to Duke v. Force, 120 Wash. 599 (208 Pac. 67, 23 A. L. R. 1354) ; Northwestern Trust Co. v. Bradbury, 117 Minn. 83 (134 N. W. 513, Ann. Cas. 1913D, 69).

From what has been said it follows that the trial court erred in overruling the general demurrer to the petition. This ruling renders it unnecessary to decide or discuss any of the other points raised by plaintiff in error.

*Judgment reversed. All the Justices concur.*