L. A. ANDREW, State Superintendent of Banking, Plaintiff, et al., Appellee, v. STATE BANK OF SWEA CITY, Defendant; PAUL W. LARSON, Appellant.

No. 40966.

APRIL 5, 1932.

REHEARING DENIED SEPTEMBER 30, 1932.

Quarton & Miller and L. A. Winkel, for substituted plaintiff and appellee, C. H. Riggert.

Sullivan, McMahon & Linnan, for defendant and appellant, Paul W. Larson.

GRIMM, J.—Originally, this was an action begun by a petition in equity filed by L. A. Andrew, Superintendent of Banking of the state of Iowa, against the State Bank of Swea City, alleging, among other things, the insolvency of the bank, and asking that the said Superintendent should be appointed receiver. This petition was filed October 25, 1927. On the same day, an order was entered appointing said L. A. Andrew, Superintendent, or his successor in office, permanent receiver of said bank.

On December 9, 1927, the receiver filed an ''application for order of court for assessment against stockholders.'' On the same day there was filed an ''Order authorizing receiver to proceed with action for the collection of stock assessment.''

On December 27, 1929, two years later, the receiver filed an ''Application for an order to sell remaining assets at public auction.'' Attached to said application was a schedule of the assets to be sold, and included therein, under the heading ''Unpaid Stock Assessments,'' was listed the name ''Paul W. Larson'' and the amount $500.00.

On January 8, 1930, there was filed an ''Order authorizing sale of assets and directing procedure of sale.'' Following this, on January 23, 1930, all of the assets listed were sold for the lump sum of $2,405.00 to C. H. Riggert.

On March 15, 1930, C. H. Riggert filed a ''Motion to substitute party plaintiff and for default.'' On the same day, the court entered an Order sustaining the motion, in so far as the same asked the substitution of Riggert as party plaintiff.

On April 1, 1930, the defendant filed a ''Motion to Dismiss,'' which motion contained, among other things, the grounds:

''4th. Because the claim against this defendant is not such as can be sold or conveyed.

"5th. Because as a matter of law the plaintiff had no right to sell or convey or assign the claim for assessment against this defendant."

On April 9, 1930, the court made the following entry:

"On consideration of the Motion of P. W. Larson the Court finds that the general creditors of the Trust should be made parties and directed that the general creditors, whose claims have been filed as such and allowed by the Receiver shall be brought in by the plaintiff. The defendant is given the right to remove (renew) his motion after the general creditors have been brought in. All parties except."

On June 27, 1930, the receiver filed his final report. Notice was published of the hearing on this report, and on July 14, 1930, the final report was approved and the receiver was discharged.

On September 29, 1930, C. H. Riggert filed an "Amendment to Application for Order of Court for Assessment against Stockholders; and Supplemental Allegations thereto." This amendment contains in the first division an adoption of all of the allegations in the application of December 9, 1927. Then there is alleged the sale of the assets in the hands of the receiver, including the assignment of the receiver's claim against Paul W. Larson as a stockholder.

Defendant Paul W. Larson's Motion to Dismiss was overruled on October 7, 1930, to which ruling he took exception.

On October 21, 1930, the defendant Paul W. Larson filed an "Amended and Substituted Answer," in which he, in substance, denies generally and asks that the plaintiff's petition be dismissed.

The cause proceeded to trial on December 4, 1930.

It satisfactorily appears from the record that after applying all assets and paying out all the money which came into the hands of the receiver, there was still remaining, at the time the receiver was discharged, an amount due the depositors and creditors of the bank in excess of $96,000.00. The capital stock of the bank was only $25,000.00. There was an unpaid balance on general claims in excess of $19,000.00. The sale of assets, including the claim against Larson, brought the receiver $2,405.00.

Of this amount, $1,470.00 was arbitrarily assigned by the parties in charge, to the credit of the stock assessment account.

One R. H. Miller was the Examiner in Charge for the receiver. He testified, among other things, as follows:

"We first offered the different classes for sale separately and took bids for them, but finally sold everything that was offered in one job lot for $2405.00, and my apportionment of the $2405.00 was simply the way I decided I wanted it divided. I don't know whether I had any authority or instructions from the Department to do it that way or not, but that is the way I did it, and I am the one that made the apportionment. I simply took that $2405.00 and divided it in the way I thought it ought to go. * * * That was not the bid I had on the stock assessment. The total of the individual bids was considerably below the total of the bid of $2405.00."

It nowhere appears in the record what amount, if any, was actually bid for the Larson claim. As the Larson claim was sold with all the other remaining assets in the hands of the receiver, there is no way of determining what amount, if any, of the $2405.00 was the proceeds of the sale of the Larson claim. Some question is raised in the record as to whether Larson was in fact a stockholder; but for the purposes of this case, we will assume, without deciding, that at all times material hereto, he was a stockholder and owned five shares of the par value of $100.00 each in said State Bank of Swea City.

Numerous other questions are raised by the appellant, but as we view this case, we have occasion to determine only one.

The liability, if any, of the stockholder Larson in this case defendant rests primarily upon Section 9251 of the Code, which reads as follows:

"9251. Liability of Stockholders. All stockholders of savings and state banks shall be individually liable to the creditors of such corporation of which they are stockholders over and above the amount of stock by them held therein and any amount paid thereon, to an amount equal to their respective shares, for all its liabilities accruing while they remained such stockholders."

The enforcement of this claim is dependent upon Sections 9252, 9253 and 9254, as follows:

"9252. Enforcement. Should any such association or corporation become insolvent, its stockholders may be severally compelled to pay such deficiency in proportion to the amount of stock owned by each, not to exceed the extent of the additional liability hereby created.

"9253. Action by creditor. The assignee or receiver of any such corporation, or in case there is none, or of his failure or refusal to act, any creditor thereof, may maintain an action in equity to determine the liability of the stockholders, and the amount to which each creditor shall be entitled; and all parties interested shall be brought into court.

"9254. Distribution of proceeds. Should the whole amount for which the stockholders are made individually responsible, as provided by the three preceding sections, be found in any case to be inadequate for the payment of all the debts of any such association or corporation, after the application of its assets to the payment of such debts, then the amount due from such stockholders, on account of their individual liability created by said sections, as such, shall be distributed equally among all the creditors of such corporation in proportion to the several sums due them."

Apparently the exact question before us in this case has not been decided by this court. This statutory stockholder's liability has frequently been before this court on other somewhat analogous questions. Apparently the plaintiff considers this claim against the stockholder as though it were an ordinary debt of the stockholder's. He cites in support of his position Section 10991 of the Code, which provides:

"No action shall abate by the transfer of any interest therein during its pendency, and new parties may be brought in, as may be necessary."

The plaintiff deals with the question as though this liability were an ordinary chose in action which, upon assignment, might be prosecuted in the name of and for the benefit of the assignee. Is it such a claim, or is it rather a special statutory liability, imposing an obligation upon the stockholder to contribute ratably

to a trust fund with other stockholders, which said trust fund shall be used solely for the payment of the creditors of the corporation? As bearing on this question, we quote from some of the cases in this court:

Leach v. Arthur Savings Bank, 203 Iowa 1052, is a case in which the stockholder, in answer to a demand for the statutory payment, sought to offset a payment made by him to repair or make good impaired capital. This court said:

"Under the above section of the statute (what is now Section 9251), in the liquidation of these insolvent banks, when it is found that the assets of the bank are not sufficient to pay its liabilities, recourse is to be had to this superadded liability provided by statute, and the limit fixed by the statute on this superadded liability is 100 per cent of the face value of the stock held by the respective stockholders; and, if this 100 per cent in value is needed to pay the liabilities of the corporation, then the statute authorizes its collection. It is not, in a true sense, an assessment, but is a statutory liability. * * * The fund thus created from the enforcement of this liability 'shall be distributed equally among all the creditors of such corporation in proportion to the several sums due them.' "

The court quotes with approval from Northwestern Trust Co. v. Bradbury, 117 Minn. 83 (134 N. W. 513), as follows:

" 'It amounts, for all practical purposes, to a reserve or trust fund, to be resorted to only in proceedings in liquidation, when necessary to meet the payment of obligations of the corporation. It is limited to an amount equal to the par value of the stock held and owned by each stockholder, and exists in favor of the creditors collectively, not severally, and in proportion to the amount of their respective claims against the corporation.' "

In Andrew v. Farmers Trust & Savings Bank, 204 Iowa 243, this court, in speaking of the said statutory liability, said:

"The fund is for the payment of all the corporate debts of the bank after its assets are exhausted. If it is insufficient to pay all the debts, it must be distributed among the creditors according to the established principles of equity. State ex rel. Stone v. Union Stock Yards St. Bank, 103 Iowa 549. The stockholders' liability is to creditors, and not to the corporation."

Further quoting with approval from Northwestern Trust Co. v. Bradbury, 117 Minn. 83 (134 N. W. 513), this court said:

" 'No single creditor can enforce payment of his debt against any one or more of the stockholders, because he has no several or independent right to the fund.' * * * So here, the liability involved can be enforced only in proceedings instituted for that purpose on behalf of all creditors, and that remedy is exclusive."

In Williams v. McCord, 204 Iowa 851, this court said:

"The clear purpose and intent of the legislature were to provide that the receiver could bring an action in equity in the forum having jurisdiction of the receivership proceeding, and that the individual stockholders should all be made parties to said action. The situs of the corporation is in the forum where the receivership proceedings are instituted. The corporation itself could be sued there. The proceedings for the appointment of the receiver of such corporation, by virtue of the statute, must be brought there. The proceedings for assessment must likewise be brought there. Any other rule would lead to endless confusion. Numerous courts could not be engaged in determining the question of the necessity for an assessment against the stockholders, or the amount thereof. The statute contemplates but one action of this character, which is to be in the forum where the receivership is."

In Andrew v. Peoples State Bank, 211 Iowa 649, this court said:

"It may be added here that the provision of Section 9251 is intended for the protection of creditors in the event of insolvency of the corporation. It is available only in case of insolvency, and only in favor of then existing creditors. It is never available to the corporation, as such."

In Home Savings Bank v. Berggren, 211 Iowa 697, this court said:

"These sections (9251 and 9252) relate to the superadded liability of stockholders for the debts of an insolvent bank. The bank itself has no right to maintain such an action. Such action accrues to the creditors, and not to the bank."

See also Andrew v. Farmers State Bank, 212 Iowa 329.

Clearly this is purely a statutory liability, and it is created solely for the purpose of creating a fund, whether it be called a trust fund or not, which, if insufficient to pay all creditors, is to be apportioned pro rata among them. It may be assumed, without deciding, that if the substituted plaintiff had paid the receiver for an assignment of this claim against the defendant Larson the sum of $50.00, which sum had been distributed to the creditors, the substituted plaintiff might recover from Larson on his statutory stock liability that amount. The record here is entirely without proof of the amount, if any, which was paid by the substituted plaintiff Riggert to the receiver for an assignment of the statutory liability claim against Larson. The officer in charge, as previously shown, admits his apportionment was purely arbitrary. It was *not* what was bid for the claim. Is Larson, under such circumstances, liable to the substituted plaintiff for his full statutory liability? May a purchaser at such "scavenger sale" pay little or nothing for such a claim, speculating on his ability to make Larson pay the full amount of the claim, or at least secure a settlement for the well known "Nuisance Value" of such claims?

The record fails to accurately show what other assets were included in the sale. Manifestly, title passed to all physical property included and to all notes and other similar obligations. Manifestly, title to such physical property could be transferred by assignment by the receiver under authority of court. It is also apparent that the payment of notes held by the bank and assigned by the receiver under authority of court could be enforced by the purchaser. Such obligations of the makers of notes are of an entirely different character from the statutory superadded liability of a stockholder. Such liability can only be enforced for the purpose of payment to creditors. If the assignee paid nothing for this assignment, the creditors received nothing. If the assignee paid $50.00 for the claim against Larson, then the creditors received only $50.00, and the balance of $450.00 cannot be collected against Larson; because it would be collecting this statutory superadded liability for a purpose other than the payment of creditors. Moreover, the enforcement of this claim, as it was enforced by the trial court, cannot be justified upon any ground such as that it is economical to gather up the

tag ends of a receivership and dispose of them for whatever they will bring at auction in order that the receivership may be closed. That reasoning may be perfectly good as to property other than this special limited liability involved in this case. Such liability cannot be hawked at auction and sold to speculators for their individual aggrandizement, with little or no benefits flowing to the stockholders. To do so would be to plainly circumvent the manifest purpose of the statute.

The statutory liability created by Section 9251 of the Code is not an "asset" of the bank, and cannot be sold as such under an order for the "sale of assets." See Leach v. Arthur Savings Bank, 203 Iowa 1052, 1. c. 1059; Andrew v. Farmers Trust & Savings Bank, 204 Iowa 243, 1. c. 248; Home Savings Bank v. Berggren, 211 Iowa 697, 1. c. 699.

The enforcement of trust fund obligations of this character should be by the receiver. If, in his judgment, such a claim is questionable as to collectibility, it should be compromised, as by law provided, but it cannot become the basis of private speculation or oppression.

It follows that the cause must be, and is,—Reversed.

WAGNER, C. J., and EVANS, MORLING, and KINDIG, JJ., concur.