**FREDERICK v. BAXTER ARMS CORPORATION et al.**

No. 8565.

District Court, E. D. New York.

Jan. 16, 1939.

Martin H. Young, of New York City, for plaintiff.

William N. Tobin, of New York City, for defendants.

BYERS, District Judge.

This is an action in equity by the trustee in bankruptcy of the defendant Elizabeth Bunge, to set aside a conveyance of real estate made by her to the corporate defendant Baxter Arms Corporation on November 2, 1933, on the ground that the same was made without consideration and with intent to hinder, delay and defraud her creditors, and caused her to become insolvent.

The other individual defendants are the mother and brother of Elizabeth Bunge, who are joined because they are officers and directors with her in the said corporation, and are sought to be enjoined as such from disposing of the said property.

The evidence having been taken and considered, the following are the

### Findings of Fact

1. The property described in paragraph 13 of the complaint was taken by Elizabeth Bunge in her own name in September of 1930.

2. In so acquiring title, the plaintiff paid the cash consideration over and above a first mortgage from funds, securities and properties of her father and mother entrusted successively by them to her for safe keeping and investment for the benefit of her mother and her. said brother who was an infant of the age of fifteen in 1922 when her father and mother determined that the father's property should be so administered. Her father died on October 4, 1923.

3. The said funds and securities, so received by Elizabeth Bunge, were not described in any written document, but were held and administered by her in a voluntary fiduciary capacity, and in the belief that she was legally and morally required to abide by her parents' wishes.

4. Elizabeth Bunge, without financial consideration to herself, conveyed the said property by deed to the corporate defendant on November 2, 1933. Since that date she has not received any part of the rents thereof.

5. The mother and said brother of Elizabeth Bunge are the only stockholders in the corporate defendant except for a qualifying share or two which were issued in her name.

6. In 1927 Elizabeth Bunge invested her own one-third share of the cash and securities so received by her from her father, namely, $5,000.00, in stock of the corporation holding title to the property occupied by the Elmhurst National Bank.

7. Thereafter she was induced to believe that she was required to exchange that stock for 62½ shares of stock in the bank itself.

8. During the bank holidays commencing March 4, 1933, the said Elmhurst National Bank was closed.

9. On February 21, 1934, one Thomas F. Hanley was appointed receiver of said bank by the Comptroller of the Currency of the United States of America.

10. The testimony in this case does not purport to establish the date of actual insolvency of the said bank.

11. On June 7, 1934, the said Comptroller duly made an assessment upon the said Elizabeth Bunge, as a stockholder in said bank, of $25.00 per share for each share of said stock owned by her, which assessment she failed to pay.

12. Action was duly brought by the said receiver in this court against the said Elizabeth Bunge to recover the amount of said assessment, less her savings deposit in the bank (of which the receiver availed himself), on February 26, 1936.

13. The said receiver duly recovered judgment against the said Elizabeth Bunge by default in the sum of $1,672.78, on March 31, 1936.

14. On April 27, 1936, the said Elizabeth Bunge filed her voluntary petition in bankruptcy in this court, describing her occupation as that of a counter clerk employed in a pharmacy in New York City, and listing in her schedules the said claim of the said receiver as her only indebtedness, and asserting therein that she was possessed of no property.

15. The bankruptcy proceeding was thereafter duly conducted before the designated referee, and an order was filed by him, dated July 23, 1936, closing the case, following the first meeting of creditors, at which no assets were disclosed and no trustee was appointed.

16. The report of the first meeting of creditors, made by the said referee and filed in this court, discloses that on May 14, 1936, the only debt proved against the bankrupt was that of said Thomas F. Hanley as receiver of the Elmhurst National Bank of New York, in the said sum of $1,672.78, being the amount of the said judgment so recovered by him.

17. On July 10, 1936, the said Elizabeth Bunge duly obtained her discharge as a bankrupt from the said indebtedness to the said receiver.

18. On April 8, 1938, one Sadie Zenn is deemed, for the purposes of this litigation only, to have purchased the said judgment in favor of the said receiver.

19. The said Sadie Zenn is the mother-in-law of the plaintiff Morton Frederick, and is an elderly woman whose physical condition was said to be such that she could not appear in court at the trial of this cause.

20. By order dated June 3, 1938, the said bankruptcy proceedings were reopened in response to the petition of the said Sadie Zenn, which asserted that a transfer of the real estate referred to in Finding 4 hereof was fraudulent and that the petitioner desired it to be set aside, whereby the appointment of a trustee and the reopening of the estate in bankruptcy would be rendered necessary.

21. Thereafter a meeting of creditors was called by the said referee, and the plaintiff appeared at the said meeting, as attorney in fact for said Sadie Zenn, the only alleged creditor, and caused himself to be chosen trustee, and thereafter qualified by filing a bond in the sum of $200.00 which was duly approved June 22, 1938.

22. By order dated June 30, 1938, the said trustee procured the appointment of his attorney of record in this cause, to prosecute an action to set aside the transfer of the real estate referred to in Finding 1 hereof.

23. The plaintiff conducted sundry examinations of witnesses before the referee in bankruptcy during the months of July, August and September, 1938, as the result of which he was apprised of the facts and circumstances hereinbefore found concerning the source of the money and securities which enabled the defendant Elizabeth Bunge to purchase the real estate in question for the benefit of her mother and brother, and that the property had been administered by her for their sole benefit.

24. As the result of said examinations, the plaintiff was apprised that the defendant Elizabeth Bunge had been engaged throughout the entire period of her mature years in earning her living as an employee of others, at a wage which at no time exceeded $18.00 a week, and that it was impossible for her to accumulate from her wages a sufficient sum of money to enable her to purchase with her own funds the real estate described in Finding 1 hereof.

## Conclusions of Law

I. The said property transferred by Elizabeth Bunge to the defendant Baxter Arms Corporation on November 2, 1933, belonged in equity and good conscience to her mother and brother and, while the

legal title thereto was vested in her, she held it in a fiduciary capacity only, and had no personal interest therein.

II. The judgment obtained by Thomas F. Hanley, as receiver of the Elmhurst National Bank, was duly discharged as a debt of the defendant Elizabeth Bunge, to the knowledge of the said Sadie Zenn and her son-in-law, Morton Frederick, the plaintiff in this action, prior to the alleged purchase of the said judgment by the said Sadie Zenn.

III. The said judgment obtained by the said receiver, Thomas F. Hanley, was solely for the benefit of the creditors of the Elmhurst National Bank and, if the plaintiff were to succeed in this action, the said creditors could obtain no resultant benefit.

IV. The conveyance of the said real estate by Elizabeth Bunge to the defendant Baxter Arms Corporation was not a conveyance of her own individual property, but of property of which the equitable and beneficial owners were her mother, Marie Bunge, and her brother, Frank L. Bunge.

V. The said conveyance was not made with intent to hinder, delay and defraud creditors of the said Elizabeth Bunge.

VI. The defendant is entitled to judgment against the plaintiff, dismissing the complaint on the merits, with costs.

The foregoing should not be permitted to merge into a decree, unaccompanied by some discussion of the evidence.

This litigation brings into view a chapter of professional activity worthy of the annals of those lately eminent practitioners, the Messrs. Dodson & Fogg.

The circumstances under which the plaintiff succeeded in clothing himself with the appearance of legal authority to institute this cause were not fully developed at the trial, but enough was shown, as the result of the court's requesting him to take the witness stand, to illuminate his status.

He is an attorney at law, said to have been admitted to the Bar in 1918. His mother-in-law is one Sadie Zenn, an elderly person who did not appear at the trial, and whose actual initiative in the alleged purchase of miscellaneous non-liquid assets, from the receiver of the Elmhurst National Bank, has not been demonstrated.

Since this is an action in equity, according to accepted principles the plaintiff should be reasonably expected to present an ostensibly meritorious cause. The evidence fails to expose any response to that requirement.

The acquisition of the judgment recovered by the receiver, with knowledge of the discharge thereof in bankruptcy, in the name of one who is not an attorney, and of the testimony of Elizabeth Bunge in supplementary proceedings instituted by the receiver, should be contemplated in light of the 28th Canon of Professional Ethics, adopted by the New York State Bar Association, reading as follows:

"28. *Stirring up Litigation, Directly or Through Agents.*—* * * Stirring up strife and litigation is not only unprofessional, but it is indictable at common law. It is disreputable to hunt up defects in titles or other causes of action and inform thereof in order to be employed to bring suit * * *."

The defendant Elizabeth Bunge is the daughter of Frank Bunge, who died in October of 1923, and the defendant Marie Bunge; she was born in 1896. Her father and mother conducted a delicatessen store, and in that she helped her mother after her father's death.

As the result of his efforts, the father had accumulated, in round figures, something over $15,000.00 by the time he became incapacitated through illness to continue in business. This was during 1922. He was a victim of arthritis, which became so severe that it was difficult for him even to sign his name.

Under those conditions, he, his wife and his daughter Elizabeth discussed the family affairs; because the latter had been educated in this country and had come to command her parents' confidence, the father and mother agreed that his savings accounts and investments should be handled by Elizabeth for the benefit of her family, which included her brother who was then about fifteen years of age.

Doubtless, in better informed circles, a lawyer would have been consulted and perhaps a voluntary trust created; but for reasons that are easy to gather from the testimony, the informal arrangement was made which has been stated, with the general purpose that each of the three individual defendants should ultimately have an equal share of the father's total accumulations up to $15,000.00, and the excess over that sum should belong to the mother.

In less than a year, the father died.

The mother and daughter operated a delicatessen store until such time as it no longer was feasible for the mother to do this, and thereafter the daughter sought her own employment and has continued ever since in the capacity of a clerk at a counter in a drugstore.

Naturally her salary, which she said was from $16.00 to $18.00 a week, was insufficient to enable her to accumulate any funds of her own. She and her mother used the cash that was left by the father and his investments, in carrying on the mother's business, as circumstances seemed to require, and finally in 1930 the property described in the complaint was purchased by Elizabeth Bunge in her own name, in the same way that she had handled the properties entrusted to her by her father; in 1927 she had invested her $5,000.00, under advice, in the purchase of 62½ shares of the corporation which held the legal title to the property occupied by the bank.

Three years later the remaining two-thirds of the father's original $15,000.00 in cash and other property were used by Elizabeth to acquire the said real estate for the exclusive benefit of her mother and brother.

The foregoing was testified to by Elizabeth Bunge on the witness stand, when she was called by the plaintiff, and nothing was offered to discredit or disprove her narrative, which was convincing to the court.

The trustee was informed of the circumstances which have been related, through examinations of the bankrupt before the referee and the answers made to interrogatories propounded to the mother and by the former's testimony in supplementary proceedings conducted by the receiver of the bank. While those depositions were read only in part at this trial, it is a fair assumption that there was no inconsistency between the disclosures otherwise to be found in them, and the testimony of Elizabeth Bunge at this trial, or the attention of the court would have been called thereto.

Clearly, therefore, the trustee, had he so chosen, could have abandoned his cause (since he was acting for his mother-in-law as the only reputed creditor) without bringing the case to trial and inviting judicial determination of the controversy.

The testimony is convincing that Elizabeth Bunge did not convey her own property, when she transferred the real estate in question to the Baxter Arms Corporation, and that the allegations in the complaint of a fraudulent transfer, as against her creditors, have failed for lack of proof.

The infirmity of the plaintiff's cause, however, involves also the question of his capacity to seek relief in a court of equity. While he occupies the ostensible position of a trustee in bankruptcy, the plain evidence is that he speaks for but one creditor, and her identity is thought to be so nearly his, that the line of demarcation is shadowy and without substance.

If it be assumed, for argument, that the real estate described in the complaint was the individual property of Elizabeth Bunge when she conveyed it to the corporate defendant in November of 1933, is the plaintiff to prevail?

The title of Sadie Zenn to the judgment recovered by the receiver of the bank is not clear, by reason of an apparent flaw in its devolution, but for present purposes that will be ignored.

The nature of the right to collect an assessment against bank stockholders, substantially similar to that which pertained to the receiver of this bank, has been discussed in other cases, and here invites attention.

The statute is found in Title 12 U.S.C. § 64, 12 U.S.C.A. § 64, and provides in substance that stockholders in a national bank shall be held individually responsible for its contract debts to the par value of their stock in addition to the amount invested therein.

In construing § 5151 of the Revised Statutes [12 U.S.C.A. § 63] not to be presently distinguished from the above statute, the Supreme Court said in Scott v. Deweese, 181 U.S. 202, at page 213, 21 S.Ct. 585, at page 589, 45 L.Ed. 822:

"The present suit is primarily in the interest of creditors of the bank. It is based upon a statute designed not only for their protection, but to give confidence to all dealing with national banks in respect of their contracts, debts, and engagements, as well as to stockholders generally." (The latter words have to do with rights inter sese where fraud was asserted in connection with the acquisition of stock by the defendant in that case.)

In Delano v. Butler, 118 U.S. 634, at page 653, 7 S.Ct. 39, at page 46, 30 L.Ed. 260, it is said:

"The assessment under that section [5151, 12 U.S.C.A. § 63] is made by authority of the Comptroller of the Currency, is not voluntary, and can be applied only to the satisfaction of the creditors equally and ratably."

See also Page v. Jones, 7 F.2d 541, at page 544, certiorari denied 269 U.S. 587, 46 S.Ct. 203, 70 L.Ed. 426.

Since the stockholders' liability was created for the benefit of the creditors of the Elmhurst National Bank, the inquiry naturally presents itself as to whether they could derive any benefit, if the plaintiff in this court should prevail.

Manifestly the answer is: No.

That the question fairly may be posed, is shown by what has been said by other courts.

In Dutcher v. Marine National Bank, Fed.Cas. No. 4203, 12 Blatchf. 435, a demurrer was sustained in the Circuit Court for this district, to a bill in equity filed by an assignee in bankruptcy in 1875, of a New York State bank, to enforce a provision of the State constitution establishing stockholders' liability for the bank's debts to the extent of stockholding. The court said in part:

"The liability thus provided for is purely collateral to the liability of the bankrupt debtor. It is a liability to, and created a right in favor of, the creditors of the corporation, and is not a liability to the corporation itself, nor, in any legal sense, for the benefit of the corporation. It is neither property, nor a right of property, nor a credit of the bankrupt.

"In some broad sense, having respect to the rights of the creditors, it may be called a provision for the payment of debts, and, in that sense, as insisted by counsel for the complainants, 'assets', but not assets of the bankrupt.

"The assignee in bankruptcy has no legal or equitable title, right, or interest therein."

While the foregoing was written concerning a liability created by the then constitution of the State of New York, and not that found in the federal statute under which the receiver of the Elmhurst National Bank brought his action against Elizabeth Bunge, it is clear that the reasoning applies with equal force to this case. The right of recovery asserted by the receiver pertained to the creditors of the bank; his constituency was dual, in that he represented them and the bank. See Kennedy v. Gibson, 8 Wall. 498, 19 L.Ed. 476.

The liability of the stockholders to the creditors was not an asset or property of this bank, and it is important to maintain the distinction between the capacity to enforce the obligation which pertained alike to the creditors (See Brown v. O'Keefe, 300 U.S. 598, at page 604, 57 S.Ct. 543, 81 L.Ed. 827) and the receiver acting under the orders of the Comptroller of the Currency—Title 12 U.S.C. § 192, 12 U.S.C.A. § 192—and the inherent nature of the obligation itself. It did not become an asset of the bank merely because the receiver could take legal steps to collect it.

If Elizabeth Bunge's statutory liability to assessment was not bank property before suit was brought by the receiver, it did not become so through the process of reduction to judgment. The character of the obligation was not changed, but the obligation itself became merged in the judgment.

Since the judgment was recovered in this court, there is no embarrassment in dealing with it as may seem requisite, such as might arise if it were that of a State tribunal, although even in that case the federal court, sitting in equity, would adjudicate the controversy according to equitable principles. Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870.

That case involved fraud in the procurement of the original judgment, and none is present here, but it is nowhere stated, so far as I have been able to discover, that fraud must be shown as a necessary prerequisite to the exercise of the equity powers of the court. It was said, for instance, in Brashear v. West, 1833, 7 Pet. 608, 8 L.Ed. 801, by Chief Justice Marshall [page 616]: "To deprive a party of the fruits of a judgment at law, it must be against conscience that he should enjoy them."

That expression describes this plaintiff's position. His mother-in-law purchased, at or following public sale, some sixty or so judgments recovered by the receiver, of which about forty-seven were based upon receiver's suits to recover judgment upon stockholders' assessments;

others were for notes held by the bank, and there were also notes which apparently had not been reduced to judgment.

This court has felt free to consult its own files to ascertain the facts which were but imperfectly developed at the hearing.

The plaintiff, being a witness, was unable to state how much Sadie Zenn paid for this particular judgment, and it appears from the order of April 2, 1938 (File C–3488), permitting the successor receiver to sell these judgments and notes "without recourse and without warranty of any kind or character" to one Robert T. Norment, that the sum of $1,850.00 had been offered by him for the miscellaneous assortment which has been described.

It may be said in parenthesis, that the apparent hiatus, between Norment's title and that of Sadie Zenn, is what has been ignored for present purposes.

Assuming that she acquired this judgment, she is in the position aptly described in Andrew v. State Bank, 214 Iowa 1339, 242 N.W. 62, 82 A.L.R. 1280. There the Supreme Court of Iowa dismissed an action in equity, in which an assignee of a receiver of a state bank was seeking to recover a decree against a stockholder under a comparable statute. The assignee was denied recovery, it appearing among other things, that he could not show that he had paid any definite sum for this particular claim. The court said that the stockholders' liability accrued solely to the creditors. The opinion contains the following [page 65]:

"May a purchaser at such 'scavenger sale' pay little or nothing for such a claim, speculating on his ability to make Larson [the stockholder] pay the full amount of the claim or at least secure a settlement for the well-known 'Nuisance Value' of such claims?

" * * * Such liability cannot be hawked at auction and sold to speculators for their individual aggrandizement. * * *

"The enforcement of trust fund obligations of this character should be by the receiver. If, in his judgment, such a claim is questionable as to collectibility, it should be compromised, as by law provided, but it cannot become the basis of private speculation or oppression."

It is unnecessary in this case to go so far as to say that the judgment recovered by the receiver could not have been the subject of a valid assignment in the legal sense, by the judgment-creditor. Here the question is whether the equity powers of the court should be called into play to effectuate the receiver's sale of the judgment.

In deciding to withhold the sanction of chancery to this plaintiff, the essential nature of the cause which he presents, and the complete absence of merit which characterizes his status as a suitor, are deemed to be conclusive.

This result is not necessarily at variance with the decision in Waldron v. Alling, 73 App.Div. 86, 76 N.Y.S. 250. That was an action at law by the assignee of a receiver of a National bank in the State of Washington of a claim to enforce a stockholder's liability pursuant to U.S.R.S. § 5234, Title 12 U.S.C. § 192, 12 U.S.C.A. § 192, against the executrix of a deceased stockholder residing in New York.

The trial justice dismissed the complaint, and the Appellate Division, Fourth Department, reversed, apparently because of the expense to the receiver incident to requiring him to bring his own suit in New York. Thus was principle submerged in expediency; the equity powers of the court, to look beyond the legal aspect of the controversy, were not invoked, since the court was dealing only with the common law status of the assignee, and deemed the right of the receiver to enforce the stockholder's liability to be an asset of the bank. This court respectfully differs with that view, for reasons authoritatively stated in Dutcher v. Marine National Bank, supra.

In the construction of a federal statute, this court is not bound to follow a state court. See: New Jersey v. Anderson, 203 U.S. 483, at page 491, 27 S.Ct. 137, at page 140, 51 L.Ed. 284: "While we take this view of the decisions of the supreme court of New Jersey * * * the bankruptcy act is a Federal statute [11 U.S. C.A. § 1 et seq.] the ultimate interpretation of which is in the Federal courts." Calhoun Gold Mining Co. v. Ajax Gold Mining Co., 182 U.S. 499, at page 505, 21 S.Ct. 885, at page 889, 45 L.Ed. 1200: "At any rate, a Federal statute has more than a local application, and until construed by this court cannot be said to have an established meaning."

The denial to the plaintiff of the relief here sought, upon the grounds stated, renders unnecessary the consideration of the

arguments made on his behalf, that the transfer of the real estate by Elizabeth Bunge on November 2, 1933, rendered her insolvent although the receiver was not appointed until February 21, 1934, and the assessment was not made until June 7, 1934. Clearly she was a stockholder when the assessment was made, but whether she was so contingently indebted to the bank's creditors eight months prior thereto as to involve her in the meshes of section 273 of the Debtor and Creditor Law of the State of New York, has not been made the subject of proof; that deficiency, if such it be, is deemed not to be of moment, in view of the reasoning which requires a decision in favor of the defendants.

Settle decree dismissing complaint on the merits, with costs.